**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BRENDA HERRON, | Case No. 1:20-cv-07469 |
| Plaintiff, | |
| v. | Hon. Thomas M. Durkin |
| GOLD STANDARD BAKING, INC., | |
| Defendant. | |

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION TO STAY**

**I.      Introduction**

Brenda Herron spent almost a year temping at Gold Standard Baking before she was hired on as an employee. About six months later, she joined the union there. The whole time, Gold Standard required Herron to use the same fingerprint scanning timeclock, no matter her status. But Gold Standard did not comply with the Illinois Biometric Information Privacy Act's notice-and-consent regime. Herron therefore filed this individual case under BIPA, which Gold Standard removed, moved to dismiss, and moved to stay. The motion to stay should be denied. Gold Standard wants this case to wait for four pending appeals in other BIPA cases. But none of those appeals can possibly have the kind of impact that would justify delay. Gold Standard's arguments to the contrary ignore *American Pipe* tolling and assume that Herron was always an employee and always a member of the union. Because of tolling and because Herron was not always an employee and union member, Gold Standard's arguments fail. Moreover, Herron, an individual struggling during the pandemic, needs relief as soon as she can get it. Delay, to her, right now, is extremely prejudicial.

**II.      Background**

Brenda Herron started working in the packaging department of Gold Standard Baking in 2017. Dkt. 6, Compl. ¶ 7; Ex. 1, App. for Employment. She did not come on as an employee. A staffing agency placed Herron at Gold Standard as a temp. Ex. 2, 2/18/21 Kellam Email. And, as

a temp, Herron began using the fingerprint scanner on Gold Standard's timeclock. Compl. ¶ 9; Ex. 2, 2/18/21 Kellam Email. According to Gold Standard's records, Herron first used the scanner on October 4, 2017. Ex. 2, 2/18/21 Kellam Email. Gold Standard had been using that same scanner and timekeeping system since 2013. Dkt. 11-1 ¶ 12.

While Herron was working at Gold Standard as a temp, Janeen Johnson filed a class action complaint against Gold Standard and the staffing agency that placed Herron, alleging BIPA violations. Ex. 3, Class Docket; Ex. 4, Class Compl. The complaint was filed on July 18, 2018. Ex. 3, Class Docket. The class definition includes "[a]ll individuals working for any Defendant in the State of Illinois who had their fingerprints collected … by any Defendant during the applicable statutory period." Ex. 4, Class Compl. ¶ 56. *Johnson* remains pending and class certification has not yet been decided. Ex. 4, Class Docket.

Meanwhile, Herron remained a temp for almost a year. But on August 12, 2018, she applied for fulltime employment with Gold Standard and on August 23, 2018, she was hired. Ex. 1, App. for Employment; Ex. 5, New Hire Payroll Input. The next day, after 10 months of swiping her fingerprint, Herron signed a document purporting to be a BIPA policy and consent form. Ex. 6, BIPA Form.[1] About six months later, Herron applied to join a union for workers at Gold Standard. Ex. 7, 2/22/19 Union Application. Gold Standard claims, but has provided no documents that show, that Herron ultimately did join the union. Dkt. 11-1 ¶ 11. Herron ultimately left Gold Standard in December 2019. Dkt. 11-1 ¶ 5.

Several months later, Herron filed this individual BIPA case in state court. Dkt. 1, Compl. Gold Standard removed the case, arguing that Herron's state-law claims are preempted by federal labor law due to her membership in the union and therefore arise under federal law for purposes of subject-matter jurisdiction. Dkt. 6, Not. of Removal ¶ 8. In its removal papers, Gold Standard incorrectly alleged that Herron "was a member of the Union at all times throughout her employment with" Gold Standard. Dkt. 6 ¶ 11. But she only joined the union after almost a year of temping and about six months of employment. Subject matter jurisdiction is nonetheless appropriate, as the claims that predate her alleged union membership—and thus the federalizing effect of labor law—are "so related to claims" that are federalized that this Court may exercise

---

[1]The signature page of this document is undated but it was produced with another, similar document that suggests it was signed on August 24, 2019. Pending confirmation of certain facts, Herron will likely concede that this document negates her claims that postdate its signing, leaving only those claims from October 4, 2017, to August 23, 2019—a period during which she was a temp for Gold Standard but not an employee.

supplemental jurisdiction over them. 28 U.S.C. § 1367(a); *e.g.*, *Roberson v. Maestro Consulting Servs.*, No. 20-CV-00895-NJR, at *21-22 (S.D. Ill. Dec. 14, 2020) ("[T]he Court finds it appropriate to exercise supplemental jurisdiction over the remaining non-union claims.").

Gold Standard then filed a motion to dismiss, Dkt. 11, arguing again that Herron's claims are preempted under federal labor law, among other things, Dkt. 12. Gold Standard next filed a motion to stay pending the resolution of four appeals. Dkt. 13. *McDonald v. Symphony Bronzeville Park, LLC*, No. 126511, will determine whether the exclusivity provisions of the Illinois Workers Compensation Act bar an employee from suing an employer under BIPA in court. *Tims v. Blackhorse Carriers, Inc*., No 1-20-0563 (Ill. App.), and *Marion v. Ring Container Technologies*, LLC, No. 3-20-0184 (Ill. App.), will address the statute of limitations for BIPA claims. And *Cothron v. White Castle Systems, Inc.*, No. 20-3202 (7th Cir.), will determine whether the statutory text authorizing damages "for each violation" means what it says. Alternatively, Gold Standard wishes to stay discovery until the Court decides its motion to dismiss. Dkt. 13 ¶¶ 31-36. While Herron does not object to pausing discovery pending the motion to dismiss, the motion to stay should be denied.

//

//

### III.   Timeline

Because some of the issues turn on dates, Herron offers this timeline for easy reference:

| Date | Event | Evidence |
|---|---|---|
| 2013 | Gold Standard implements biometric timekeeping | Dkt. 11-1 ¶ 12. |
| 10/4/17 | Herron begins[2] working at Gold Standard as a temp and uses Gold Standard's biometric timekeeping system for the first time | Compl. ¶ 7; Ex. 1; Ex. 2 |
| 7/18/18 | Janeed Johnson files BIPA class action against Gold Standard | Ex. 3 |
| 9/12/18 | Herron applies for employment at Gold Standard | Ex. 1 |
| 9/23/18 | Gold Standard hires Herron as an employee | Ex. 5 |
| 9/24/18 | Herron signs Gold Standard's BIPA form | Ex. 6 |
| 2/22/19 | Herron applies to join the union at Gold Standard | Ex. 7 |
| 12/19/19 | Herron leaves Gold Standard's employment | Dkt. 11-1 ¶ 11 |
| 11/13/20 | Herron files suit against Gold Standard | Compl. |

### IV.   Legal Standard

The Court is never required to stay a case pending an appeal in another case, even if that appeal may resolve some of the issues in that case. *See Landis v. North American Co*., 299 U.S. 248, 255 (1936) (reversing order granting stay). It may do so, but only if the party seeking the stay "make[s] out a clear case of hardship or inequity in being required to go forward … ." *Id*. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Id*.

To determine whether the "rare circumstances" necessary to justify a stay exist, Courts consider "(i) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (ii) whether a stay will simplify the issues in question and streamline the trial, and (iii) whether a stay will reduce the burden of litigation on the parties and on the court." *Obrzut, et al. v. LVNV*

---

[2]Herron does not recall and Gold Standard's records do not show precisely when she began working there. *See* Ex. 2. But it is safe to assume that she began working at Gold Standard around the same day, if not the same day, that she began using its timekeeping system.

Pg. 4

*Funding, LLC, et al.*, No. 19-cv-01780, 2020 WL 3055958, at *1 (N.D. Ill. June 8, 2020) (internal citations and quotations omitted).

**V.       Argument**

Gold Standard's stay request is unjustified. The company has not met and cannot meet its burden because the stay it proposes promises delay without benefit. Herron, now struggling through the pandemic, needs relief as soon as possible.

**A.       Gold Standard Has Not Shown That a Stay Will Provide Any Benefit**

By moving to stay, Gold Standard took on the burden of showing that a stay would provide some benefits. *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Gold Standard failed to meet that burden because none of the appeals it wants to wait for are likely to have a meaningful impact on this case.

*McDonald* will have no impact on Herron's claims against Gold Standard for the time she was a non-employee temp, which are likely the only claims she will pursue. *See* note 2, *supra*. *McDonald* will determine whether BIPA claims fall under any exception to the exclusivity provision of the Illinois Worker's Compensation Act. Dkt. 13 ¶ 9. Under the Act, the workers' compensation system is the "exclusive" venue for employer/employee claims. *E.g.*, *Baylay v. Etihad Airways P.J.S.C.*, 881 F.3d 1032, 1038 (7th Cir. 2018). Absent an exception to exclusivity, an employee cannot sue her employer in court. *Id*. But the exclusivity provision only protects employers. *E.g., Whitaker v. T.J. Snow Co.*, 151 F.3d 661, 662 (7th Cir. 1998); *see also* 820 ILCS 305/5(a) (allowing no suit "other than the compensation provided herein" by an employee against "the employer, his insurer, his broker, any service organization that is wholly owned by the employer, his insurer or his broker … or the agents or employees of any of them …"). "[E]ntities other than the employer who might be responsible" for the alleged injury are still fair game. *Id*. Here, Gold Standard was not Herron's employer while she was a temp. Herron was working for a staffing agency that placed her with Gold Standard; not for the company itself. So *McDonald* is irrelevant to Herron's pre-employment period claims and therefore cannot justify a stay.

Gold Standard's arguments about *Tims* and *Marion* fare no better. The best Gold Standard can hope for from those appeals is a one-year statute of limitations. Dkt. 13 ¶ 13. But even then, Herron's claims would be timely. Under the class action tolling rule announced in *American Pipe Construction Co. v. Utah*, 414 U.S. 538 (1974) and adopted by the Illinois Supreme Court in *Steinberg v. Chicago Medical School*, 69 Ill.2d 320, 342 (1977), a pending class action tolls the

statute of limitations for absent members from the day of filing until the case loses its class status. *See*, *e.g.*, *Carpenters Pension Tr. Fund v. Allstate Corp. (In re Allstate Corp. Sec. Litig.)*, 966 F.3d 595, 615 (7th Cir. 2020). Here, a BIPA class action was filed against Gold Standard on July 18, 2018, and it has yet to lose its class action status through dismissal or denial of certification. Ex. 3. Herron also fits within the class definition. Ex. 4, Am. Class Compl. ¶ 56. Herron's claims have therefore been tolled since the day the class case was filed.

Because of that tolling, her claims are timely even if the statute of limitations is only a year and even if her claims accrued only the very first time she used Gold Standard's biometric system. Herron first used that system on October 4, 2017. Ex. 2. The class action was filed, and tolling began, less than one year later, on July 18, 2018. Herron's claims are therefore timely no matter the outcome in *Tims* and *Marion* (and even if *Cothron* holds that BIPA claims accrue only on the first violation of the statute, *see* Dkt. 13 ¶ 22 (making this argument)).

Even without *American Pipe* tolling, *Tims* and *Marion* still would offer no good reason for a stay. *Tims* and *Marion* are unlikely to have any impact on this case because they—like every other court Herron is aware of—will likely determine that BIPA's limitations period is 5 years. *E.g.*, *Cothron v. White Castle Sys.*, No. 19 CV 00382, at *6 n.4 (N.D. Ill. Aug. 7, 2020) ("[T]he Court also acknowledges [plaintiff's] argument that '[e]very trial court that has decided the issue has unanimously held the five-year 'catch-all' limitations period applies.'"). With a 5-year period, all of Herron's are timely are timely, since she first swiped her fingerprint at Gold Standard less than 5 years ago.

The slim possibility that *Tims* or *Marion* will break with all those other decisions and choose a shorter limitations period is not only too remote to justify a stay, it also lacks the legal significance necessary to do so. This is because the Court may disregard state intermediate appellate decisions when "persuasive data" suggest that the state's highest court would also ignore them. *City of Chicago, Ill. v. Stubhub*, 624 F.3d 363, 365 (7th Cir. 2010) ("When sitting in diversity, a federal court should follow the decision of an intermediate state appellate court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."). The unanimity of the decisions holding that BIPA's statute of limitations is 5 years would be "persuasive data" suggesting that the Illinois Supreme Court would reject a contrary result from *Tims* or *Marion*. The two appeals will either confirm what all the other courts say or become such outliers that this Court may disregard them. Either way, they do not justify a stay.

Neither does *Cothron*. *Cothron* will address two arguments, both of which lost below: that BIPA's statute of limitations runs only from the first violation; and that the statutory text that reads "[a] prevailing party may recover for each violation" means that a prevailing party can only recover for one violation. Dkt. 13 ¶¶ 22-26. Neither issue justifies a stay. The limitations period issue will have no impact because of *American Pipe* tolling and the likelihood that *Tims* and *Marion* will agree with all other courts that the limitations period is 5 years. The "for each violation" issue, while significant, does not justify a stay because it only goes to the value of this case. Parties almost always litigate in the face of uncertain damages. If Gold Standard is concerned about a multi-million dollar verdict, it should make a reasonable settlement offer; not seek to pause the case.

The upshot here is that waiting for these four appeals offers little or no benefit to the parties or Court here.

**B.      A Stay Will Prejudice Herron.**

Against Gold Standard's insufficient showing of benefit, this Court must weigh the harm delay would cause to Herron. *LVNV Funding, LLC, et al*., 2020 WL 3055958, at *1. There are three ways in which delay would cause harm. Any of one which justifies denying the stay.

First, delaying the litigation means delaying relief. Delaying relief is particularly harmful now. We stand in the middle of pandemic that has shattered employment in Illinois. In a few short months, the number of unemployed individuals in the state ballooned from about 250,000 to over 1,000,000.[3] Recovery has been slow and hourly workers like Herron have been hard hit. Herron needs money and this case can provide it. So not only is Herron entitled to a "speedy" resolution of his case, Fed. R. Civ. P. 1, but also she needs that disposition sooner rather than later. Delay is therefore prejudicial.

Second, delay is prejudicial because it allows Gold Standard to continue any non-compliant storage, handling, and disclosure of Herron's biometric information. Gold Standard never claimed to have deleted Herron's information or that it does not disclose it. Every month Gold Standard remains able to do so puts Herron's unique identifiers at greater risk. She therefore has an interest in speed that derives from the heart of the statute.

Finally, a stay would prejudice Herron because it brings with it all the standard litigation disadvantages associated with delay. *See generally Colucci v. Chicago Crime Commission*, 31 Ill.

---

[3]https://data.bls.gov/timeseries/LASST170000000000003

App. 3d 802, 810 (Ill. App. Ct. 1975) (discussing problems associated with litigation delay). Documents may disappear. Key witnesses may move or forget key facts. These are real concerns, *see* ex. 2, that weigh against issuing a stay.

Relief, risk of disclosure, and risk of lost evidence are all very real harms that will come if the case is delayed by a stay. Against those harms, Gold Standard's failure to show any real likelihood that the stay will benefit the case is dispositive—the motion should be denied.

**C.      The Court Should Not Follow Other Courts That Have Entered Stays**

Herron knows that some state and federal courts have entered stays in BIPA class actions, while others have denied them. Ex. 8, *Brandenberg v. Meridian Senior Living, LLC*. Gold Standard cites some of these cases. Dkt. 13 ¶ 28. But those cases do not show how Gold Standard has met its burden in this one.

First, to Herron's knowledge, no court has confronted and rejected Herron's specific arguments, much less done so in an individual—as opposed to class—case. Despite what has happened in other cases, this remains a situation in which a stay would bring no benefit and impose substantial harm. Second, Herron is concerned about the possibility of *endless* delay. Today Gold Standard wants to stay the case pending *McDonald*, *Tims, Marion,* and *Cothron*. When those cases are decided, there will be other appeals and Gold Standard will no doubt ask this Court to hit pause again. Because of the volume of BIPA litigation and BIPA defendants' willingness to continue to present arguments—like the statute of limitations argument here—that have been rejected unanimously and repeatedly, there is a distinct possibility of endless delay because there will always be another theoretically dispositive but practically irrelevant BIPA appeal. Endless delay would be profoundly unfair to Herron and the Court should not countenance or invite it by granting the stay here.

//

//

Pg. 9

## VI.    Conclusion

Because Gold Standard has failed to meet its burden, the Court should deny Gold Standard's motion to stay the case. Herron does not oppose Gold Standard's request to stay discovery pending the resolution of its motion to dismiss.

Dated: March 4, 2020.

Respectfully submitted,

/s/ Thomas R. Kayes

Thomas R. Kayes (Ill. Bar No. 6315461)
**Law Office of Thomas R. Kayes, LLC**
2045 W Grand Ave, Ste B, PMB 62448
Chicago, IL 60612
t. 708.722.2241
tom@kayes.law
*admitted pro hac vice*

Attorneys for Plaintiff