UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA HERRON, | |
| Plaintiff, | No. 20-cv-07469 |
| v. | Judge Thomas M. Durkin |
| GOLD STANDARD BAKING, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

While working at Gold Standard Baking, Inc. ("GSB"), Brenda Herron scanned her fingerprints to clock in and out of each shift. She claims that GSB used this timekeeping system to collect and retain her fingerprints without her informed consent, in violation of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. GSB moved to dismiss Herron's complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and also moved to stay the proceedings. At the status hearing on February 11, 2021, the Court informed the parties that it would decide GSB's motion to stay before turning to the motion to dismiss. For the following reasons, the motion to stay is granted in part and denied in part.

**Standard**

District courts have the power to control their own dockets, including the discretion to stay proceedings. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *Munson v. Butler*, 776 F. App'x 339, 342 (7th Cir. 2019). In deciding whether to grant a stay, courts "balance the competing interests of the parties and the interest of the judicial

system." *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 779 (N.D. Ill. 2011) (citation omitted). This balancing act includes consideration of three main factors: "(1) whether a stay will simplify the issues in question and streamline the trial; (2) whether a stay will reduce the burden of litigation on the parties and on the court; and (3) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party." *In re Groupon Derivative Litig.*, 882 F. Supp. 2d 1043, 1045 (N.D. Ill. 2012) (citations omitted).

**Background**

GSB is an industrial baking company that uses a biometric timekeeping device to track employees' hours. When Brenda Herron first used the device on October 4, 2017, a scanner captured an image of her fingerprint and converted it into a unique template. Each time Herron used the device thereafter, the scanner captured a new image of her fingerprint, created a new template, and compared the new template to the original to confirm Herron's identity.

Herron worked at GSB five days a week. She was required to scan her fingerprints at least eight times throughout each workday; that is, to clock in at the beginning of the day, to clock out for a break, to clock in after the break, to clock out for lunch, to clock in from lunch, to clock out for a second break, to clock in from the second break, and to clock out at the end of the day. Herron left GSB in December 2019.

Herron claims that GSB's timekeeping practices violated BIPA. Enacted in 2008, BIPA aims to protect the privacy interests of personal biometric information,

including fingerprints. The statute is enforced through a private right of action, available to "[a]ny person aggrieved by a violation." 740 ILCS 14/20. Section 15 of the statute places restrictions on the collection, retention, and disclosure of biometric information. Section 15(b) requires private entities seeking to collect biometric information to first (1) inform the person whose biometrics are being collected, in writing, that the information is being collected or stored; (2) inform the person in writing of the "specific purpose and length of term" for which the biometrics are being collected, stored, and used; and (3) receive a written release from the person. *Id.* § 14/15(b). Herron alleges that GSB failed the first two requirements and that each fingerprint scan was a separate violation of BIPA.

Herron filed this action in state court on November 13, 2020. GSB removed the case to federal court, and then moved to dismiss Herron's complaint and stay the proceedings. GSB's motion to dismiss advances five separate arguments, two of which are relevant here. Namely, that Herron's claims are preempted by state labor law and time-barred by the statute of limitations. According to GSB, the proceedings should be stayed because whether Herron's claims are, in fact, preempted and untimely will be determined by cases pending before the Illinois Supreme Court, Illinois Appellate Court, and the Seventh Circuit Court of Appeals. The Court considers each case in turn.

## Analysis

### I. Stay Pending the Illinois Supreme Court's Decision in *McDonald*

GSB first seeks to stay this matter pending the Illinois Supreme Court's decision in *McDonald v. Symphony Bronzeville Park, LLC*, No. 126511. In that case, the court will

3

decide whether BIPA claims brought by employees against their employers are preempted by the Illinois Workers' Compensation Act ("IWCA"), 820 ILCS 305/1, *et seq.* GSB argues that this Court should await the *McDonald* decision because it could be dispositive of GSB's preemption defense.

While it is true that the outcome in *McDonald* may impact this case, the Court declines to stay the proceedings on this basis. Indeed, "[w]here the Illinois Supreme Court has not ruled on an issue, decisions of the Illinois Appellate Courts control, unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Nationwide Agribusiness Ins. Co. v. Dugan*, 810 F.3d 446, 450 (7th Cir. 2015) (citation omitted). An Illinois Appellate Court has already ruled that the IWCA does *not* preempt BIPA claims brought by employees. *McDonald v. Symphony Bronzeville Park*, 2020 WL 5592607, *8 (Ill. App. Ct. Sept. 18, 2020). So has nearly every state and federal court to consider the question. *See, e.g.*, *Cothron v. White Castle System, Inc.*, 467 F. Supp. 3d 604, 615-16 (N.D. Ill. 2020) (collecting state and federal cases to show that "courts have unanimously rejected" the idea that BIPA claims are preempted by the IWCA). Furthermore, at least three federal courts and several state courts have refused to stay BIPA proceedings pending resolution of the preemption issue. *See, e.g.*, *Roberson v. Maestro Consulting Servs. LLC*, 2021 WL 1017127, at *1 (S.D. Ill. Mar. 17, 2021); *Mintun v. Kenco Logistics Servs. LLC*, 2020 WL 1700328, at *2 (C.D. Ill. Apr. 7, 2020); *Donets v. Vivid Seats, LLC*, 20-CV-3551, Dkt. 27 (N.D. Ill. Dec. 12, 2020) (Valderrama, J.); *Thome v. Flexicorps, Inc.*, No. 2018-CH-01751 (Cir. Ct. Cook Cty. May 8, 2018).

Because an Illinois Appellate Court has concluded that the IWCA does not preempt an employee's BIPA claim brought against her employer, and because most other courts have held the same, the Court denies GSB's motion to stay this case pending the outcome in *McDonald*.

## II. Stay Pending the Illinois Appellate Court's Decisions in *Tims* and *Marion*

GSB argues next that a stay is warranted pending two Illinois Appellate Court decisions—*Tims v. Black Horse Carriers, Inc.*, No. 1-20-0562, and *Marion v. Ring Container Techs., LLC*, No. 3-20-0184—because those cases could decide whether BIPA claims are potentially subject to a one-, two-, or five-year statute of limitations. According to GSB, any decision that the applicable statute of limitation is one or two years will mean that Herron's claims are untimely since she filed her complaint (on November 13, 2020) at least three years after she first used GSB's timekeeping system (on October 4, 2017).

For her part, Herron argues that even if *Tims* and *Marion* decide that the applicable statute of limitations for BIPA claims is one year, her claims are still timely under the *American Pipe* tolling doctrine. That doctrine was first enunciated by the Supreme Court in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), and later expanded in *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983). At its core, the doctrine provides that the timely filing of a class action tolls the applicable statutes of limitations for all persons who fall within the scope of the class complaint. If class certification is ultimately denied, then putative plaintiffs may choose to pursue individual claims either in the still-pending case or in new individual cases. Because the doctrine suspends the applicable limitations period, it "eliminates the need for members of the

5

putative class to rush to court to protect their rights while class certification is still pending and uncertain in the original action." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 615 (7th Cir. 2020).

Herron points out that a class action was filed against GSB in the Circuit Court of Cook County less than a year after she first used GSB's fingerprint system. *See* R. 17 at 5-6 (citing *Johnson v. Gold Standard Baking, Inc. and Elite Labor Services, Ltd.*, No. 2018-CH-09011 (Cir. Ct. Cook Cty. July 18, 2018)). According to Herron, she is a putative plaintiff in the *Johnson* action since the complaint alleges that GSB failed to comply with BIPA's disclosure mandates during 2017-2018, and because the class definition includes "[a]ll individuals for any Defendant in the State of Illinois who had their fingerprints collected . . . by any Defendant during the applicable statutory period." While no certification decision has been made in the *Johnson* case, Herron nevertheless argues that her claims should be tolled in this case.

The trouble for Herron is that *American Pipe* and its progeny focus on situations where subsequent actions are filed *after* class certification is denied, and Herron filed her action *before* the certification decision.[1] Herron therefore seeks the benefits of tolling even though the putative *Johnson* class remains in limbo. As best the Court can tell, neither the Seventh Circuit nor Illinois courts have addressed this precise situation. But

---

[1] The Court also recognizes that *American Pipe* applies only to claims under federal law for which the period of limitations is also federal. *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 265 (7th Cir. 1998). But that does not necessarily preclude application of the *American Pipe* doctrine to this case, because when state law supplies the period of limitations, it also supplies the tolling rules, and Illinois courts have largely adopted *American Pipe* and *Crown, Cork & Seal*. *See Steinberg v. Chicago Medical School*, 371 N.E.2d 634 (1977); *Mabry v. Vill. of Glenwood*, 41 N.E.3d 508, 515 (Ill. App. Ct. 2015) (collecting cases).

other courts in this District have, and most have refused to extend tolling to those in Herron's situation. *See Levine v. Bally Total Fitness Holding Corp.*, 2006 WL 8460936, at *7 (N.D. Ill. Sept. 29, 2006) ("Here, plaintiff has chosen to pursue separate litigation prior to a determination on class certification; therefore, the *American Pipe* tolling rule is not available to him."); *Shaffer v. Combined Ins. Co. of Am.*, 2003 WL 22715818, at *3 (N.D. Ill. Nov. 18, 2003) ("[P]laintiffs that file their own individual lawsuit before class certification is denied do not obtain the benefits of . . . class-action tolling."); *In re Brand Name Prescription Drugs Antitrust Litig.*, 1998 WL 474146, at *8 (N.D. Ill. Aug. 6, 1998) (declining to apply the tolling doctrine where plaintiffs "made a conscious decision early on to pursue their claims on an entirely separate, though essentially parallel, track from that of the Class case"); *Chemco, Inc. v. Stone, McGuire & Benjamin*, 1992 WL 188417, at * 2 (N.D. Ill. July 29, 1992) ("Only if class certification was denied . . . would the putative class members be able to bring suits individually under *American Pipe* [and *Crown, Cork & Seal* ].").

From one perspective, denying plaintiffs like Herron the benefits of tolling makes sense because filing separate lawsuits in advance of the class certification decision undermines the policies supporting the tolling doctrine. As the Supreme Court has explained, tolling promotes "efficiency and economy of litigation" by discouraging putative class members from filing a "multiplicity of actions" before the limitations period ends. *Crown, Cork & Seal*, 462 U.S. at 351. When a plaintiff files her own action before the class certification determination, as is the case here, she creates the very inefficiency that the Supreme Court sought to prevent. *See In re*

7

*Allstate*, 955 F.3d at 615 ("*American Pipe* tolling is intended to promote efficiency and economy in litigation."); *In re Copper Antitrust Litig.*, 436 F.3d 782, 794 (7th Cir. 2006) (Cudahy, J., concurring) (noting that the "essential rationale" of *American Pipe* is to avoid "clutter[ing] the courts with duplicative lawsuits"); *Portwood v. Ford Motor Co.*, 701 N.E.2d 1102, 1104 (Ill. 1998) (tolling is "essential to prevent needless 'protective' filings").

On the other hand, several courts—including a few in this District—have supplied good reasons why the tolling doctrine should be extended to early filers. For one thing, the Supreme Court has painted with a broad brush in defining the doctrine: "The commencement of a class action suspends the applicable statute of limitations as to *all asserted members* of the class that would have been parties had the suit been permitted to continue as a class action." *Crown, Cork & Seal*, 462 U.S. at 353 (quoting *American Pipe*, 414 U.S. at 554) (emphasis added). Nothing in that statement, or other Supreme Court tolling decisions, "suggests that the rule should be otherwise for a plaintiff who files an individual action before certification is resolved." *In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) (extending class tolling doctrine to early filers); *see also In re Hanford Nuclear Rsrv. Litig.*, 534 F.3d 986, 1009 (9th Cir. 2008) (same); *State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1232 (10th Cir. 2008) (same); *Rochford v. Joyce*, 755 F. Supp. 1423, 1428 (N.D. Ill. 1990) (same). What is more, depriving plaintiffs like Herron of the benefits of tolling would render them "dependent on the pace set by [class action] attorneys and the Court alike." *Mason v. Long Beach Mortg. Co.*, 2008 WL 4951228, at *2 (N.D. Ill.

Nov. 18, 2008) (extending class tolling to early filers). That pace could be dreadfully slow, keeping putative class members on the sidelines for years until the certification question is finally resolved. *Id.*

At this juncture, the Court need not decide whether the tolling doctrine applies to Herron. When ruling on a motion to stay, courts are required to consider whether the stay will "simplify the issues in question" and "reduce the burden of litigation on the parties and on the court." Both factors counsel in favor of a stay here. Indeed, if *Tims* and *Marion* conclude that the applicable statute of limitations for BIPA claims is five years, then the tolling argument will fall by the wayside and the remaining issues will be simplified for both the Court and the parties. That point is especially salient here since GSB has moved to dismiss Herron's complaint on at least five different grounds. *See Varnado v. W. Liberty Foods*, 2021 WL 545628, at *1 (N.D. Ill. Jan. 5, 2021) (granting stay because it "significantly advance[d] judicial economy"). And although most lower courts have already found that the statute of limitations for BIPA claims is five years, it is possible that the Illinois Appellate Courts in *Tims* and *Marion* will disagree, and that decision, rather than decisions entered by lower courts, would likely control here. *See Nationwide Agribusiness*, 810 F.3d at 450. Unlike the preemption issue and *McDonald*, no Illinois Appellate Court has weighed in on the statute of limitations question. GSB's motion to stay this case pending the outcomes in *Tims* and *Marion* is therefore granted.

9

### III. Stay Pending the Seventh Circuit's Decision in *White Castle*

Finally, GSB moves to stay this matter pending the Seventh Circuit's decision on an interlocutory appeal in *In Re: White Castle System, Inc.*, No. 20-8029, Dkt. 9 (7th Cir. Nov. 9, 2020). The controlling question in that case is whether a private entity violates BIPA only when it *first* collects or discloses an individual's biometric data without making the required disclosures, or whether a violation occurs *each time* the entity collects or discloses the data.[2]

The Court finds it appropriate to stay this case pending the *White Castle* decision because the outcome there could be dispositive of the timeliness issue here. As stated, Herron first swiped her fingerprint in October 2017, and she filed her complaint in November 2020. Should the Seventh Circuit find that a BIPA violation occurs only when an entity first collects an individual's biometric data, Herron's claims may be time-barred if *Tims* and *Marion* also find that a one or two-year statute of limitations applies. *See Donets*, 20-CV-3551, R. 27 (granting motion to stay on

---

[2] The full question on appeal is:

> Whether a private entity violates Sections 15(b) or 15(d) of the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 et seq., only when it is alleged to have first collected (§ 15(b)) or to have first disclosed (§ 15(d)) biometric information or biometric identifiers ("biometric data") of an individual without complying with the requirements of those Sections, or whether a violation occurs each time that a private entity allegedly collects (§ 15(b)) or discloses (§ 15(d)) the individual's biometric data without complying with the requirements of the applicable subsection.

*See Cothron v. White Castle Sys., Inc.*, No. 19-CV-00382, Dkt. 141 (N.D. Ill. Oct. 1, 2020).

10

similar grounds); *Roberson*, 2021 WL 1017127, at *2 (same). And while *American Pipe* may moot the timeliness issue altogether, the Court still finds it prudent to stay this matter because *White Castle*, *Tims*, and *Marion* will provide much needed clarity as to whether GSB's statute of limitations argument is even in play. *See Vaughan v. Biomat USA, Inc.*, 2020 WL 6262359, at *2 (N.D. Ill. Oct. 23, 2020) (granting motion to stay because it made "little sense for the parties or the court to expend time and resources litigating dispositive issues where appellate guidance is forthcoming").

**IV. Whether a Stay Will Prejudice Herron**

Before ordering a stay, the Court must determine whether Herron will be "unduly prejudiced" or "tactically disadvantaged" by the delay. *In re Groupon Derivative*, 882 F. Supp. 2d at 1045. Herron claims that she will be prejudiced, but none of her arguments are availing. First, Herron contends that delaying the case means delaying relief. As an hourly employee, she says that she has been "hard hit" by the pandemic and that she needs money "sooner rather than later." While the Court is sympathetic to Herron's financial situation, her argument rests on the assumption that the case will be decided in her favor, which is far from certain at this stage in the proceedings. Indeed, the Court has not even decided whether Herron has stated plausible claims for relief. Herron's first argument therefore fails.

Herron argues next that a stay allows GSB "to continue any non-compliant storage, handling, and disclosure of [her] biometric information." R. 17 at 7. But nothing in Herron's complaint or opposition brief suggests that GSB is currently using her fingerprints in a way that violates BIPA. Her argument is thus speculative

11

at best, and not a sufficient basis for denying GSB's motion. *See Vaughan*, 2020 WL 6262359, at *3 (rejecting similar argument).

Herron's next argument fails for similar reasons. She claims that a stay *may* result in the loss of important documents or key witnesses. That is true, and the Court is sensitive to this reality, but there is no allegation suggesting that relevant evidence has been lost or misplaced since the filing of Herron's complaint. Furthermore, the stay in this case is limited in duration. Indeed, once the decisions in *Tims*, *Marion*, and *White Castle* are issued, the proceedings will likely resume. *See Vaughan*, 2020 WL 6262359, at *2 (finding that a stay limited in duration was unlikely to prejudice non-moving party).

Finally, Herron warns against endless delay. She worries that once *Tims*, *Marion*, and *White Castle* are decided, there will be other appeals and GSB will ask this Court to hit pause again. The Court shares this concern but does not believe that it justifies denying GSB's motion. At this point in the proceedings, GSB has only requested a stay until the *Tims*, *Marion*, and *White Castle* cases are decided. Once *Tims* and *Marion* are resolved, the Court and parties will likely have a better sense of whether Herron's claims are timely.

## Conclusion

For all these reasons, GSB's motion to stay, R. 13, is granted in part and denied in part. The Court stays this case pending the Illinois Appellate Court's decisions in *Tims* and *Marion*, and pending the Seventh Circuit's decision in *White Castle*. The status hearing scheduled for April 12, 2021 is vacated. The parties are to file a joint status report as soon as one of the three cases has been decided. In the meantime, the Court denies as moot GSB's motion to dismiss, R. 11, with leave to refile once the stay

is lifted, and grants GSB's unopposed motion to stay discovery pending the resolution of the motion to dismiss.

ENTERED:

*Thomas M Durkin*

---

Honorable Thomas M. Durkin
United States District Judge

Dated: April 9, 2021