UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRENDA HERRON, | |
| Plaintiff, | No. 20 C 7469 |
| v. | Judge Thomas M. Durkin |
| GOLD STANDARD BAKING, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Brenda Herron alleges that her former employer, Gold Standard Baking, Inc. ("GSB"), violated the Illinois Biometric Information Privacy Act, 740 ILCS 14/15 ("BIPA"). GSB moves to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). R. 61. For the following reasons, that motion is granted in part, denied in part, and stricken in part as moot.

**Background**

Herron worked at GSB in its packaging department, first as a temporary worker employed by a staffing agency from October 4, 2017 to September 23, 2018, and then as a directly-hired employee through December 19, 2019. R. 59 ¶¶ 18–25. While there, GSB required Herron to scan her fingerprint at least eight times per day, five days per week, to clock in and out of work, breaks, and lunch. *Id.* ¶¶ 27, 37– 39. Before making Herron use the scanner for the first time and for much of her time at the company, GSB did not tell her that it was collecting or storing her biometric data, why it was collecting, storing, and using that data, or how long it planned to do

1

so. *Id.* ¶¶ 33–36. On September 24, 2018, GSB had Herron sign a written consent to collect, store, and use her biometric data. *Id.* ¶¶ 40–41; R. 17 at 2, 4; R. 17-6. Herron claims that each scan before she signed the consent form was a violation of BIPA. R. 59 at ¶ 43.

Relevant here, on February 22, 2019, Herron applied to the Chicago and Midwest Regional Joint Board Affiliated with Workers United/SEIU ("Union"). *Id.* ¶ 24; *see also* R. 17-7 (copy of application). While there is no documentation that the Union admitted Herron, GSB's Director of Human Resources and Development attests that she was a member. R. 62-1 ¶ 11. GSB and the Union are parties to a collective bargaining agreement ("CBA"), effective April 1, 2018. *Id.* ¶ 7; *see also* R. 65-1 (copy of CBA). Among other things, the CBA provides:

- The Union is the "sole and exclusive collective bargaining agent for all regular full and part-time production, sanitation, maintenance and dock workers employed by the Company at its Chicago, Illinois, facility[.]" (Art. I, § 1)

- "[C]ertain rights, powers and responsibilities belong vested" in GSB, which includes "all matters concerning or related to the management of the business and administration thereof . . . ." (Art. V) ("Management Rights Clause")

- GSB will "have a time clock and keep accurate time and pay records of the employees in the performance of their work." (Art. XV, § 6)

- Any disputes arising between GSB and the Union that are covered by the agreement must be resolved through a four-step grievance and arbitration procedure. (Art. VI, § 1); and

- "Temporary employees" are "excluded from the collective bargaining unit and are not subject to the [CBA]. . . . Temporary employees shall become permanent employees with full rights and benefits including eligibility for Union membership" after 90 days. (Art. I, § 3).

2

Herron initially filed her case in the Circuit Court of Cook County on November 30, 2020. GSB removed the action to this Court, invoking federal question jurisdiction based on the assertion that Herron's BIPA claim is completely preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA"). GSB argues that because the claim is preempted, and therefore must be dismissed under Rule 12(b)(1). Herron disagrees and seeks to have this case remanded back to state court. GSB alternatively seeks dismissal under Rule 12(b)(6) for laches, failure to state a claim for damages, and impermissible double recovery.

## Legal Standard

"A motion to dismiss under Rule 12(b)(1) tests the jurisdictional sufficiency of the complaint, accepting as true all well-pleaded factual allegations and drawing reasonable inferences in favor of the plaintiffs." *Bultasa Buddhist Temple of Chi. v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). However, "[w]here, as here, plaintiff's complaint is facially sufficient but external facts call the court's jurisdiction into question, we may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017) (citations omitted); *see also Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443–44 (7th Cir. 2009).

## Discussion

GSB contends that Herron's BIPA claim is preempted by § 301 of the LMRA because the terms of her employment were governed by the Union's CBA. Section 301 preempts state law claims "founded directly on rights created by collective-bargaining

3

agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987) (citations omitted).

As a general matter, both the Seventh Circuit and the Illinois Supreme Court have held that federal law preempts BIPA claims brought by certain union-represented employees against their employers. *See Miller v. Southwest Airlines Co.*, 926 F.3d 898, 904 (7th Cir. 2019) (BIPA claims were preempted by the Railway Labor Act); *Fernandez v. Kerry, Inc.*, 14 F.4th 644, 646 (7th Cir. 2021) (applying *Miller* to hold BIPA claims were preempted by Section 301 of the LMRA); *Walton v. Roosevelt University*, 2023 IL 128338, ¶ 31 (following *Miller* and *Fernandez* in holding that BIPA claims brought by unionized employees were preempted by the LMRA). The Seventh Circuit has explained that BIPA claims are preempted when their resolution depends on an interpretation of a CBA. *See Fernandez*, 14 F.4th at 645–46. BIPA allows an employee's "legally authorized representative" to consent to the collection and use of biometric information. *Id.* at 645 (citing 740 ILCS 14/15(b)). Accordingly, "if an employer asserts that a union has consented," whether expressly or through a management-rights clause, "then any dispute about the accuracy of that contention is one about the meaning of a [CBA] and must be resolved between the union and the employer." *Id.* at 645–46.

Here, GSB invokes not only the broad Management Rights Clause, but also the CBA's reference to the use of timeclocks to keep accurate time and pay records for Union employees and the multi-step grievance and arbitration procedure. GSB

4

argues that Herron's claim requires an analysis of whether the operation of the timeclock falls within its vested rights under the Management Rights Clause.

Yet, the CBA did not apply to Herron before she became a GSB employee, even if she worked there through another employer. To begin, the CBA did not go into effect until April 1, 2018, after Herron had been working at GSB—and scanning her fingerprint—for nearly six months. Evaluating potential violations from scans during that six-month period would not require any interpretation of the CBA because it did not yet exist. Further, Herron was not covered by the CBA until GSB hired her as an employee on September 23, 2018. That is because the bargaining unit covered by the CBA only includes certain full and part-time "employees." Art. I, § 1. Up until that date, Herron was employed by a staffing agency, not GSB.

GSB argues that the Court must determine whether Herron was a "temporary employee" under the CBA, which requires interpreting the CBA. But even if she was a "temporary employee," the CBA provides that "temporary employees" are excluded from the bargaining unit and are not subject to the CBA until, after 90 days, they "become permanent employees with full rights and benefits." The problem is that Herron did not become a permanent employee after 90 days. She remained employed by the staffing agency. That is not an interpretation of the CBA, it is a fact. If she was indeed a "temporary employee," she held that status and remained excluded from the bargaining unit until September 23, 2018. Whether Herron was a "temporary employee" or not an "employee" at all, the CBA did not apply to her, and none of the

5

alleged violations during her time as a temporary worker require an interpretation of the CBA.

Herron concedes that the CBA applied to her as of September 23, 2018, the day she became a GSB employee, and agrees that scans on or after that date are preempted. A preempted state law claim "must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). Herron asks the Court to dismiss those claims arising on or after September 23, 2018, while remanding those claims arising before that date. GSB, for its part, asks the Court to dismiss the entire complaint with prejudice. In GSB's view, because the complaint alleges a single BIPA count covering the entire period from when Herron began working at the company through when she signed the consent form, litigating that "claim" substantially depends on the interpretation of the CBA, and it is thus completely preempted.

But it does not matter how many counts Herron's complaint includes. Indeed, Herron did not even need to organize her complaints into counts at all. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077–78 (7th Cir. 1992). What matters are her claims. Herron asserts a BIPA violation for each and every scan before she signed the consent form. Each of those violations constitutes a separate claim. *Cothron v. White Castle Sys., Inc.*, 2023 IL 128004, ¶ 1 (a separate claim accrues under BIPA for each scan of a person's biometric information). The foregoing analysis shows that some of those claims are preempted, and others are not. *See Peatry v. Bimbo Bakeries USA, Inc.*, No. 19 C 2942, 2020 WL 919202, at *6 (N.D. Ill. Feb. 26, 2020) (dismissing

6

claims after CBA applied to plaintiff without prejudice and allowing claims before that date to proceed).

GSB cites *Williams v. Jackson Park SLF, LLC*, No. 19-CV-8198, 2020 WL 5702294, at *4 (N.D. Ill. Sept. 24, 2020), where the court dismissed a BIPA complaint as preempted by § 301 even though the plaintiff was not subject to the CBA for the first month of his employment. But that case does not support dismissal of Herron's entire complaint with prejudice for several reasons. For one, the plaintiff in *Williams* had been subject to the CBA for the majority of the time period at issue and sought to represent a class of employees. *Id.* Here, the overwhelming majority of the violations Herron alleges occurred before the CBA applied to her,[1] and she brings her claims on an individual basis. What's more, *Williams* preceded *Cothron*'s clarification of BIPA claim accrual, which undermines the proposition that Herron brought one, indivisible claim. Finally, and perhaps most critically, the *Williams* court allowed the plaintiff to amend. *Id.* at *5 (citing *Peatry*, 2020 WL 919202).

As such, if the Court were to dismiss the entire complaint on preemption grounds, it would be without prejudice. Herron states that she would amend to exclude scans from the time she was an employee. That complaint, for the reasons stated, would be subject to remand for lack of subject matter jurisdiction. Requiring the parties to engage in such make-work only serves to waste their resources, and

---

[1] Herron's complaint alleges BIPA violations for fingerprint scans that occurred before she signed the consent form on September 24, 2018. The CBA applied to Herron as of September 23, 2018. The approximately eight fingerprint scans from that day are a drop in the bucket of the thousands of violations she alleges.

those of the Court. Accordingly, the Court dismisses Herron's post-September 23, 2018 claims with prejudice and remands Herron's pre-September 23, 2018 claims. In light of the foregoing, the Court declines to consider the other grounds for dismissal raised by GSB.

## Conclusion

For these reasons, the Court grants in part and denies in part GSB's Rule 12(b)(1) motion to dismiss, and grants Herron's request for remand. Herron's post-September 23, 2018 claims are dismissed with prejudice, and the pre-September 23, 2018 claims are remanded to state court. GSB's Rule 12(b)(6) motion to dismiss is stricken without prejudice as moot.

ENTERED:

*Thomas M. Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: May 9, 2024